ERASTUS A. WRIGHT, adm'r &c., *vs.* EDWARD G. AUSTIN, impleaded with WARREN S. WALKER.

Where the holder of a note has in hands and under his control a fund belonging to one of the makers who is the principal debtor, a surety in such note is entitled to have such holder exhaust that fund, in the discharge of the note, before resorting to him as surety.

The administrator of the payee of a note has the right to apply so much of a distributive share of the estate, coming to the maker of the note, as will pay and discharge such note.

And a surety of the maker, when sued upon the note, by the administrator of the payee, has a right—the maker being insolvent—to insist that the administrator shall so apply the distributive share of the principal.

APPEAL from a judgment rendered upon the findings of the judge at the circuit, a jury having been waived.

The plaintiff, as administrator of John Walker, deceased, sued to recover the amount of a note, executed by Warren S. Walker and Edward G. Austin to John Walker in his lifetime, and dated the 20th day of December, 1856, by which they jointly and severally agreed to pay to him $175, with interest, on or before the first of January, 1858.

The defendant Austin set up in his answer that the note was executed by him as surety, and solely for the benefit and accommodation of the defendant Warren S. Walker, who is a son and one of the heirs at law and next of kin of John Walker, the intestate of the plaintiff. That the

note was originally made and executed to John Walker, and was owned and held by him at the time of his decease, which took place previous to the 24th day of July, 1858, and that at that time, and continually from thence hitherto, said note was made a part and portion of the personal estate of the said John Walker, deceased. "That at the decease of John Walker his estate was, and remains to the present time, entirely solvent, and there was at the time of such decease, and still is, over and above the payment of all debts and liabilities, a considerable share and portion of personal estate, which belongs to Warren S. Walker as one of the children and next of kin to John Walker, deceased, which was and is sufficient to pay and satisfy said note, and which is now in the hands of the plaintiff as such administrator, and which the plaintiff, as such administrator, has the right to offer upon and offset to said note, to the full amount of said note, principal and interest. That being one of the heirs and next of kin of John Walker, deceased, as aforesaid, and being so indebted to the estate of the said John Walker upon said note, and being liable to have his share of said estate offset thereby as aforesaid, the said Warren S. Walker, on the 24th day of July, 1858, by an instrument in writing, assigned his interest in the estate of the said John Walker' to one James 'Donney, as collateral security' for the payment of certain debts of said Warren S. Walker, but which assignment was subject to the share and interest so assigned, was justly and equitably subject to the payment of the aforesaid note, and should be so held and considered. That the said Warren S. Walker is entirely insolvent and irresponsible, and has no means or property from which the aforesaid note, or any other demand, can be collected, except his aforesaid interest in the estate of the said John Walker, deceased; and that such interest is insufficient to pay both the aforesaid note, and also the debts for which the aforesaid assignment was made, and probably little

Wright *v.* Austin.

more than sufficient to pay said note. That this defend-
ant has good reason to believe, and does believe and allege,
that the plaintiff and said Warren S. Walker are desirous
to collect the amount of the aforesaid note from this de-
fendant, and thereby enable the amount thereof to be paid
only on the aforesaid assignment to said Donney, and
thereby subject this defendant to the loss of the whole
amount of said note, principal and interest, which this de-
fendant believes to be unjust and inequitable.

That this defendant, before the commencement of this
suit, requested the plaintiff and his attorney in this action
to allow the distributive share of the said Warren S.
Walker in said estate to be applied on the aforesaid note,
to the amount of said note, as said defendant was advised
and verily believed he had the right to ask; and to guard
against any danger to said estate, offered to secure the
amount of said note, which would for any reason not be
satisfied by the distributive share of said Warren S. to said
plaintiff, beyond any contingency whatever. And this
said defendant is still ready and willing to do so, and hereby
offers to deposit the full amount of the aforesaid note and
interest with the clerk of this court, or with the surrogate
of the county of Onondaga, subject to a settlement of said
estate, and the determination and liquidation of the share
and interest of the said Warren S. in said estate." The
defendant prayed judgment that the complaint be dismiss-
ed, with costs, or that the distributive share of the said
Warren S. Walker, in the personal estate of the said John
Walker, deceased, be applied upon the aforesaid note, to
the full amount of said note, principal and interest; and
to that end, and that such distributive share might be
ascertained and determined, that the plaintiff might be
required to render an account of the personal estate of the
said John Walker, deceased, as such administrator as afore-
said, in this court; and that this defendant might have such
other and further relief as should be just and equitable.

On the trial the note was read in evidence, and the interest thereon admitted, amounting in the whole, of principal and interest, to $265.89. And it was then and there admitted that John Walker died previous to July 14th, 1858, on which day the plaintiff was appointed his administrator.

The defendant Austin offered to prove each and every of the facts alleged in his answer, and which answer is referred to as part of this case and exceptions. The plaintiff objected; and the court ruled and decided that the facts set out in the answer were not a defense to the note, and excluded the evidence; to which the defendant Austin excepted.

The evidence was here closed, and the court found as a question and matter of law, that the plaintiff was entitled to recover of the defendant Austin, for damages, $265.89. To which the defendant Austin duly excepted. The judge filed his decision in writing, which is referred to as a part of the case upon which judgment was entered; and the defendant Austin appealed therefrom.

*L. H. & F. Hiscock*, for the appellant.

*C. Sweet* and *D. Pratt*, for the respondent.

*By the Court*, FOSTER, J. There is no doubt that the defendant Austin was not entitled to set off the alleged claim of Warren S. Walker against the estate of his deceased father, as next of kin, as a counter-claim to the note in question; for that claim was not such in its nature, nor had the defendant Austin such an interest in it as would enable him to set it off. Nor do I understand that he attempted to do so. He claimed that it was a fund belonging to his principal, in the hands of, and under the control of, the plaintiff; and that he was entitled to have the plaintiff exhaust that fund, in the discharge of the note, before resorting to him as surety. It is well settled that

Wright *v.* Austin.

the administrator of the estate had the right to apply so much 'of the distributive share of that estate coming to the defendant Warren S. Walker, as would pay and discharge the note in question. (*Smith* v. *Kearney,* 2 *Barb. Ch.* 533, 547, 548, 549. *Jeffs* v. *Wood,* 2 *Peere Wms. Rep.* 128. *Sims* v. *Doughty,* 5 *Vesey,* 243. *Rankin* v. *Barnard,* 5 *Mad. Rep.* 32. *Cantery* v. *Williams,* 3 *Hare's Ch.* 359.)

A surety who has paid the debt of his principal is entitled to every remedy of the creditor, (*Edson* v. *Dillaye,* 17 *N. Y. Rep.* 158;) but if the defendant Austin were to pay and discharge the note, the lien upon the fund in the plaintiff's hands would be discharged, and the fund would pass to the assignee of the principal, to the prejudice of the defendant, who is the surety. A surety, after the debt becomes due, may come into a court of equity and compel the creditor to sue for and collect the debt of the principal debtor. (*King* v. *Baldwin,* 2 *John. Ch.* 554; *and same case in error,* 17 *John.* 384. *Hayes* v. *Ward,* 4 *John Ch. Rep.* 123.) Where the creditor has collateral security from the principal for his debt, the surety can compel him to exhaust that security before resorting to him upon his contract, or at least before obtaining an absolute judgment against him for the amount. (*Gary* v. *Cannon,* 3 *Iredell's Eq.* 64, 65.) And where a judgment has been obtained against the principal and surety, the principal being insolvent, the surety, before payment, might file a bill to compel the discharge of the debt out of the estate of the principal in the hands of third persons. (*McConnell* v. *Scott,* 15 *Ohio Rep.* 401.) So, too, the surety might compel the creditor to prove his debt before the commissioner in bankruptcy, against his principal, before he calls upon the surety for payment. (*Beadman* v. *Cruttenden, Cooke's Bankrupt Laws, marg. note,* 265, *ed. of* 1793.) And in the case of *Phillips* v. *Smith,* (*cited in Ex parte Atkinson, Cooke's Bankr. Laws,* 264, *ed. of* 1793,) a bill was filed by the surety against the

creditor of the principal, a bankrupt, to stay his proceedings at law, until he went before the commissioners to prove his debt, that he might thereby become a trustee for the surety; which was ordered, upon his bringing the money into court. (*Fell's Law of Guaranty and Suretyship*, 261, §§ 19, 20.)

Where the surety has collateral security from his principal, the creditor may compel its application in satisfaction of the debt. (*Pratt* v. *Adams*, 7 *Paige*, 615. 1 *id.* 299. 2 *id.* 311. 1 *John. Ch.* 129. 18 *John.* 505. *Clark* v. *Ely*, 2 *Sandf. Ch.* 166.) And where a surety obtains from his principal a mortgage to secure him against his liability, the creditor is entitled to the benefit of such security. And if the surety include in such mortgage a debt due to himself, as well as the indemnity against the principal's debt for which he is surety, as between himself, or his voluntary assignees, and the creditor, the latter is entitled to be first paid out of the proceeds of the mortgage. (*Ten Eyck* v. *Holmes*, 3 *Sandf. Ch.* 428.)

It is true that in all these cases of collateral security, except in the one last cited, the whole fund was, by agreement, set apart as security for the payment of the debt, or as security to reimburse the surety for any payment which he should make; but what is the difference in principle, whether it is so provided, or whether it is already in the hands of the creditor, so that he has a right to apply it to the debt if he chooses. In the last case cited, the court held that the creditor might resort to the whole fund to discharge the debt, although the surety who took the security intended at the time to take it as well to secure another debt due to himself, as to secure the debt of the creditor. And why is it that the courts would reach such a fund in the hands of the surety and appropriate all of it to the payment of the creditor's debt, and at the same time refuse to compel the creditor to apply, for the benefit of the

Wright *v.* Austin.

surety, a part of the principal in his hands, and which he had a right so to appropriate if he chose? Surely the assignee of Warren S. Walker had no claims upon the fund, either at law or in equity, until after the claims of the estate were satisfied. But I think the principles of this case have been decided in the case of *Vartie* v. *Underwood*, (18 *Barb.* 561,) where it is held to be the right of the surety, who has pledged his property, with the property of the principal, to have the property of the principal first sold and applied to the payment of the debt. In that case a wife united with her husband in executing a mortgage, to secure the payment of a debt due from him, upon 100 acres of land, of 75 acres of which she owned one-sixth ($\frac{1}{6}$th) part. The premises were sold on the mortgage, and upon the question as to the disposition of the funds, the court (at pages 564, 565) say: "The exception taken by Mrs. Underwood presents a question of more difficulty. It is claimed, in her behalf, that the mortgage debt should be wholly satisfied from the moneys arising from the husband's portion of the premises. This I think is right. The referee reports 'that the mortgage debt should be satisfied out of the entire fund raised by the sale. Thus the wife is made to pay her portion of the mortgage. In this the referee erred. It is the right of the surety, who has pledged his property, with the property of the principal, to have the property of the principal first sold and applied. This principle applies, and should govern, in directing payments after the sale of the property of both. The property, or money, of the principal is the primary fund, and should be first exhausted. This would leave the money arising from the sale of the wife's share wholly untouched by the mortgage debt." Now the pledge of the property of the wife, by the mortgage, for the payment of the debt, was as absolute and unconditional as was the promise of Austin to pay the debt in

question; and I am unable to discover any reason why a court of equity could in her case interfere and compel the creditor first to resort to the fund belonging to the husband alone, which does not operate quite as forcibly to require the plaintiff in this case first to resort to the fund in his hands, belonging to the principal debtor. Upon the whole, I am of the opinion that if the facts set forth in the answer had been proved, the defendant Austin would have been entitled to equitable relief, and that the court below erred in rejecting the testimony. (*See also* *Newton* v. *Stanley*, 28 *N. Y. Rep.* 61.)

The judgment should be reversed, and a new trial granted, with costs to abide the event; and the plaintiff be allowed so to amend his summons and complaint as to include James Donney as a party defendant, and so as to settle all questions between the plaintiff, defendant and Donney, concerning the application of the fund alleged by the answer to be in the hands of the plaintiff; and in case the plaintiff shall so amend his summons and complaint, and a new issue be joined between the parties, then all questions as to costs to be reserved until the final determination of the action.

[ONONDAGA GENERAL TERM, April 4, 1865. *Mullin, Morgan, Bacon* and *Foster*, Justices.]